UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| TRUSTEES OF THE TEAMSTERS UNION NO. 142 PENSION TRUST FUND, Plaintiffs, | ) ) ) ) |
| v. | ) Cause No. 2:11-CV-374-PRC ) |
| CATHIE'S CARTAGE, INC. *et al.*, Defendants. | ) ) ) |

| | |
|---|---|
| CATHERINE G. MORRIS, *et al.*, Counterplaintiffs, | ) ) ) |
| v. | ) ) |
| TRUSTEES OF THE TEAMSTERS UNION NO. 142 PENSION TRUST FUND, MITCHELL SAWOKCHKA, RICHARD KNIPP, RICHARD KENNEY, ROBERT McGREAL, PERRY VANROSENDALE, THOMAS SKILSON, and GARY KEBERT, Counterdefendants. | ) ) ) ) ) ) ) ) |

**OPINION AND ORDER**

This matter is before the Court on a Motion to Dismiss Defendants'/Counterplaintiffs' Counterclaims Pursuant to Rule 12(b)(6) [DE 77] and a Plaintiffs'/Counterdefendants' Motion to Strike Affirmative Defenses [DE 79], both filed by the Trustees on August 8, 2013. Both matters became fully briefed on August 29, 2013.

Before turning to these motions, however, the Court considers two threshold issues *sua sponte*. First, the pleadings and briefing in this case conflate the Trustees in their official capacities, who are the Plaintiffs (or perhaps, alternatively, the Plaintiff) in this case, and the Trustees in their individual capacities, who are named as Counterdefendants in this case. What it takes to sue a trustee in his or her individual capacity is not at issue in either the Motion to Dismiss or the Motion to

Strike. Thus, for purposes of deciding these two motions, the Court simply refers to the Trustees in both their individual and official capacities as: "the Trustees."

Second, this case is currently stayed as to Defendant Cathie's Cartage, Inc. because it is in bankruptcy. Despite this, Defendants' Amended Answer and Counterclaims include answers, affirmative defenses, and counterclaims brought by Cathie's Cartage, Inc. This will not do, of course. The Court thus strikes *sua sponte* all claims and defenses brought by Cathie's Cartage, Inc. What is unclear is exactly what parts of the Amended Answer are being brought solely by Cathie's Cartage, Inc. In the interests of thoroughness, the Court accordingly considers the merits of the Motion to Dismiss and Motion to Strike as to all Defendants.

## I. Background

Defendant Cathie's Cartage, Inc. entered into a collective bargaining agreement (CBA) with Local No. 142 of the International Brotherhood of Teamsters, AFL-CIO (Union). The CBA provided that a Trust had been previously created by an Agreement and Declaration of Trust (Trust Agreement) pursuant to a collective bargaining agreement between certain employers and the Union. The CBA required Cathie's Cartage to make periodic contributions into a Pension Fund on behalf of its employees who were represented for collective bargaining purposes by the Union. The Trustees brought this cause of action as trustees of the Pension Fund seeking to collect withdrawal liability from Cathie's Cartage and other Defendants under the Employee Retirement Security Income Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1371, as amended by the Multiemployer Pension Plan Amendments Act of 1980 (MPPAA), 29 U.S.C. §§ 1381–1461. The Trustees allege that the Pension Fund is a multiemployer plan under ERISA and that Cathie's Cartage withdrew from the Pension Fund, incurring withdrawal liability of $339,119.00.

Central to all of Defendants' Counterclaims, as well as some of its Affirmative Defenses, is a discrepancy between the name of the fund created by the Trust Agreement—"Teamsters Union No. 142 Pension Fund"— and the fund referred to in the CBA and in Plaintiffs' complaint—"Teamsters Union No. 142 Pension Trust Fund."

This issue was first litigated in a Motion to Dismiss, filed by Defendants on February 5, 2013, which this Court denied in a May 31, 2013 Opinion and Order. The Court was not persuaded that the discrepancy between the fund names warranted dismissal.

On June 3, 2013, the Trustees filed an Amended Complaint. Defendants filed an Amended Answer on July 7, 2013. The Amended Answer also brought a handful of Counterclaims against the Trustees, namely: Breach of Contract (Count I); Conversion (Count II); Negligence (Count III); Slander of Title (Count IV); and Fraud (Count V). On August 8, 2013, the Trustees filed the instant Motion to Dismiss these Counterclaims under Federal Rule of Civil Procedure 12(b)(6). They simultaneously filed a Federal Rule of Civil Procedure 12(f) Motion to Strike Defendants' affirmative defenses that relied on the same bases as their Counterclaims.

## II. Motion to Dismiss

### A. Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint and not the merits of the suit. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In ruling on such a motion, the Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *see also Tamayo v. Blagojevich*, 526 F.3d 1074, 1082 (7th Cir. 2008).

3

To survive a 12(b)(6) motion to dismiss for failure to state a claim, the complaint must first comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). Second, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570); *see also Tamayo*, 526 F.3d at 1082. The Supreme Court explained that the "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quotation marks and brackets omitted); *see also Iqbal*, 556 U.S. at 678–79; *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Determining whether a complaint states a plausible claim for relief requires the Court to draw on its judicial experience and common sense. *Iqbal*, 556 U.S. at 679.

The Court must also determine whether the exhibit attached to the Trustee's Motion to Dismiss should be considered in ruling on their motion. Under Rule 12(b)(6), the general rule is that, when a document is attached to a motion to dismiss, "the court must either convert the 12(b)(6) motion into a motion for summary judgment under Rule 56 and proceed in accordance with the latter rule, or exclude the documents attached to the motion to dismiss and continue under Rule 12." *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998). A "narrow exception" is made for documents that "are referred to in the plaintiff's complaint and are central to his claim." *Id.*

The Trust Agreement is attached to the Trustees' memorandum in support of their Motion to Dismiss. Because both the Trustees and Defendants referenced and relied upon this document in

4

their pleadings and since it is central to the claims, the Court considers it.

## B. Analysis

The Trustees make eight arguments supporting dismissal, each of which the Court considers in turn.

### *1. Law of the Case*

The Trustees' first argument is that the principle of law of the case requires dismissal of all the Counterclaims. The Trustees argue that this Court's May 31, 2013 Opinion and Order denying Defendants' Motion to Dismiss established that the omission of the word "Trust" from the Pension Fund name, created by the Trust Agreement, has no legal significance. Accordingly, the Trustees argue, Defendants' Counterclaims are merely attempts to relitigate what this Court has already decided.

The Trustees misread the Opinion on this point. What the Court decided in its May 31, 2013 Opinion and Order was that Defendants failed to show, as a matter of law, that the discrepancy in the naming of the funds *prevents* a finding that the Pension Fund was created by the Trust Agreement. The Court did not rule that the Pension Fund *was* created by the Trust Agreement. "The doctrine of law of the case creates a presumption against a court's reexamining its own rulings in the course of a litigation." *Marseilles Hydro Power LLC v. Marseilles Land & Water Co.*, 481 F.3d 1002, 1004 (7th Cir. 2007) (emphasis omitted). Here, however, the Counterclaims do not implicate the law of the case doctrine because there *is* no law of the case on this point yet. The Court accordingly denies the Trustees' Motion to Dismiss on this basis.

### *2. Standing under ERISA*

The Trustees contend that Defendants have no standing to sue the Trustees under ERISA.

5

The civil enforcement section of ERISA—29 U.S.C. § 1132(a)(1)—"limits the right to sue [under ERISA] to plan participants and beneficiaries." *S. Ill. Carpenters Welfare Fund v. Carpenters Welfare Fund of Ill.*, 326 F.3d 919, 921 (7th Cir. 2003) (citing 29 U.S.C. § 1132(a)(1)). Defendants "are neither" and thus cannot sue under ERISA. *Id.* (citing *Giardono v. Jones*, 867 F.2d 409, 412–13 (7th Cir. 1989)). The question is whether Defendants' Counterclaims are, as they insist, non-ERISA causes of action based on factual contentions as to the existence of an ERISA trust, in light of the difference in naming between the CBA and the Trust Agreement.

The Trustees contend that the Counterclaims, though couched as common law tort allegations, are *de facto* breach-of-fiduciary-duty claims under ERISA. The only law the Trustees cite to support this position is 29 U.S.C. § 1104(a)(1), which lays out the duties of fiduciaries under ERISA. It does not support the Trustees' argument that Defendants' Counterclaims are breach-of-fiduciary-duty claims masquerading as common law claims. Without bridging this crucial gap, the Trustees' argument that dismissal is required fails. The Court accordingly denies the Trustees' Motion to Dismiss on this basis.

### *3. Failure to Arbitrate*

The Trustees contend that Defendants cannot proceed on their Counterclaims (except for Count IV, which alleges Slander of Title) because the MPPAA requires "[a]ny dispute" between trustees and employers regarding a determination of withdrawal liability is to be resolved by arbitration. *See* 29 U.S.C. § 1401 *et seq.* Withdrawal liability under the MPPAA is a penalty for withdrawing from a multiemployer pension plan; "it means the employer is liable to the plan for unfunded, vested pension benefits as determined by the fund's trustee." *Chi. Truck Drivers, Helpers & Warehouse Union (Indep.) Pension Fund v. Century Motor Freight, Inc.*, 125 F.3d 526, 528 (7th

6

Cir. 1997). Employers who fail to initiate arbitration on a timely basis when challenging the plan sponsor's assessment of withdrawal liability are deemed to have waived their claims. *Nat'l Shopmen Pension Fund v. DISA Indus., Inc.*, 653 F.3d 573, 579 (7th Cir. 2011) (citing 29 U.S.C. § 1401(b)(1)).

Defendants admit that they did not timely request arbitration. But they contend that this is irrelevant because their Counterclaims are not based on ERISA at all (and are thus not a dispute about withdrawal liability). They argue that the arbitration requirement of 29 U.S.C. § 1401(a)(1) accordingly does not apply to their Counterclaims.

The Trustees contend that, whether the Counterclaims invoke ERISA or not, "the MPPAA and a multitude of cases interpreting it require an employer to bring 'any dispute' to arbitration." (Pls. Reply at 4.) The Trustees do not, however, provide the Court with a single citation to any of these "multitude of cases." And though the Trustees do say that the Counterclaims go "directly to the bases for a withdrawal liability assessment," they do not explain how each of the Counterclaims falls within the "any dispute" requirement of § 1401(a)(1). (Pls. Br. at 11.) If the Counterclaims were seeking declaratory judgment that—for example—Defendants are not "employers" under the MPPAA, this might be enough. But these Counterclaims seek damages for conversion, breach of contract, etc. The Counterclaims appear to bring to the case something more than a mere dispute about whether there is withdrawal liability. This is a close case, because, as the Trustees reiterate, these claims deal with the same underlying factual issues. But, especially given their cursory analysis and lack of legal authority, the Trustees have not demonstrated that these Counterclaims are a "dispute" under the MPPAA. 29 U.S.C. § 1401. The Trustees' Motion to Dismiss on this point is denied.

7

*4. Fraud*

The Trustees contend that Defendants' Fraud count (Count V) fails to meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). This standard "ensure[s] that the party accused of fraud, a matter implying some degree of moral turpitude and often involving a 'wide variety of potential conduct,' is given adequate notice of the specific activity that the plaintiff claims constituted the fraud so that the accused party may file an effective responsive pleading." *Lachmund v. ADM Investor Servs.*, 191 F.3d 777, 783 (7th Cir. 1999) (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1296, at 580 (2d ed. 1990)). "Particularity, for Rule 9(b) purposes, means that a plaintiff must ordinarily describe the who, what, when, where, and how of the fraud—the first paragraph of any newspaper story." *Gagan v. United Consumers Club, Inc.*, No. 2:10-CV-26, 2012 WL 729943, at *6 (N.D. Ind. Mar. 6, 2012) (internal quotation marks omitted) (quoting *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust*, 631 F.3d at 441–42 (7th Cir. 2011)). Defendants are "not required to . . . allege the facts necessary to show that the alleged fraud was actionable," but Rule 9(b) does require that they "set forth the date and content of the statements or omissions that [they] claimed to be fraudulent." *Midwest Commerce Banking Co. v. Elkhart City Ctr.*, 4 F.3d 521, 524 (7th Cir. 1993) (citations omitted). Moreover, fraud claims must include "the method by which the misrepresentation was communicated to the plaintiff." *GE Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1078 (7th Cir. 1997) (internal quotation marks omitted).

Defendants respond that they satisfied these requirements by identifying the who (the

Trustees), the what (knowingly putting money into a differently titled fund in violation of a contract between the parties); the when (from the date the Defendants entered into the fund agreement until their withdrawal); and the how (the Trustees' material misrepresentations to Defendants on the making of the agreement).

The Counterclaim does tell the reader some of the basics of the allegation, namely, that the Trustees allegedly represented falsely that they were going to put monies given them by Defendants in one fund but actually put it in another. These facts are important but, without more, they are insufficient. Nowhere in their fraud pleading do Defendants allege the method of communication (was it spoken, email, letters, etc.?), the dates of communication, or any specifics about which of the Trustees (in which capacity) did what. This falls short of the heightened standard of Rule 9(b). The Court accordingly grants the Trustees' Motion to Dismiss Count V (Fraud).

### 5. *Statute of Limitations*

The Trustees argue that, aside from Count IV (Slander of Title), all of Defendants' claims are barred by the statute of limitations. Their contention is that the Counterclaims make a number of allegations that have no specific date. And those that do refer to specific dates refer to times well outside of the statute of limitations. Defendants admit this, countering that Indiana law provides that, "[I]f a person liable to an action conceals the fact from the knowledge of the person entitled to bring the action, the action may be brought at any time within the period of limitation after the discovery of the cause of action." Ind. Code § 34-11-5-1. Defendants allege that the Trustees concealed the discrepancy between the names of the fund in the CBA and Trust Agreement and the fund they were putting money into and that Defendants did not discover the concealment until October 13, 2011, which is within the two year statute of limitations. Ind. Code § 34-11-2-4.

9

The Trustees reply that Defendants have failed to allege the who, what, when, and how relating to their discovery of the concealment, arguing that this undercuts Defendants' explanation and mandates dismissal. In supporting this, the Trustees cite their main brief, presumably to their discussion of fraud. The Trustees do not, however, provide any legal authority as to why a well-pled fraud claim is required for a defense to a statute of limitations argument. Nor do they explain why the who-what-when-how type of information is required at this point of the proceeding.

It is "irregular" to dismiss a claim on statute of limitations grounds, "for the statute of limitations is an affirmative defense. A complaint states a claim on which relief may be granted whether or not some defense is potentially available. This is why complaints need not anticipate and attempt to plead around defenses." *United States v. N. Trust Co.*, 372 F.3d 886, 888 (7th Cir. 2004) (citing Fed. R. Civ. P. 8(c); *Gomez v. Toledo*, 446 U.S. 635 (1980); *U.S. Gypsum Co. v. Ind. Gas Co.*, 350 F.3d 623 (7th Cir. 2003)). Moreover, as the Seventh Circuit Court of Appeals has recently clarified, "affirmative defenses cannot form the basis of a motion to dismiss under Rule 12(b)(6) when, as here, it is filed before the answer"; rather, it "should instead be filed as a motion to dismiss under Rule 12(c) once all of the pleadings are complete." *Milliman v. McHenry Cnty.*, 11 C 50361, 2012 WL 5200092 (N.D. Ill. Oct. 22, 2012) (citing *Richards v. Mitcheff*, 696 F.3d 635, 637–38 (7th Cir. 2012)). The Motion to Dismiss on these grounds is premature, and the Court accordingly denies it.

### *6. Breach of Contract*

The Trustees contend that, since there never was a contract between them and Defendants, the breach-of-contract Counterclaim must fail and should thus be dismissed. The breach-of-contract Counterclaim states that Cathie's Cartage and the Trustees "entered into a contract whereby Cathie's

. . . was to make employee contributions to the Trustees to be deposited into a trust fund and the Trustees were to 'manage, care for, and protect the Trust fund.'" (Defs. Amended Answer 22.) The Counterclaim cites to Exhibit A, which is not attached. Presumably it refers to the CBA, the only written contract discussed in the briefing that Cathie's Cartage had signed. But, as the Trustees point out, the Trustees are not a party to the CBA.

Defendants do not dispute this, responding that there *could* have been an implied contract between the Trustees and themselves. But they do not plead any facts to support this. Defendants response that Cathie's Cartage was not an employer under the CBA is irrelevant—the issue is whether there was a contract between the Trustees and Cathie's Cartage. Thus, since there is no reason to think that the Trustees were a party to the CBA and because there is no reason to think there was an implied contract, the Court grants the Trustees' Motion to Dismiss on this basis.

### *7. Negligence*

The Trustees contend that they cannot be liable on the negligence Counterclaim because they did not owe Defendants any duty—instead, as trustees, they owed a duty solely to the participants and beneficiaries. The Trustees explain that this is the case for the same reasons they marshaled in arguing that Defendants do not have standing to bring these Counterclaims. As explained above, the Court is not persuaded that Defendants do not have standing—the Trustees have not shown that these claims are *de facto* breach-of-fiduciary-duty claims merely appearing to be state-law claims.

The Trustees, however, make an alternative argument that the Trust Agreement provides that the Trustees have no duties to employers. Section 3.14 of that document states that no one dealing with the Trustees has the obligation "to see the application to the Trust purposes herein stated of any money or property belonging to the Trust Fund . . . or that the terms of the Restated Agreement and

11

Declaration of Trust have been complied with" etc. (Pls. Br. Attachment #1 at 9). This is irrelevant because it states that parties dealing with the Trustees are immune from liability, not the other way around.

Section 3.15 lists at length the duties the Trustees owe to participants and beneficiaries. This, too, misses the mark, however, since the presence of some duties in a contract does not show conclusively that no other duties were owed. And while Defendants' negligence claim (indeed, the entire attempt to hang this case on the omission of the word "Trust" from the title of a document) is not especially convincing, this is a fact-bound issue best reserved for the summary judgment phase of litigation or for trial. The Trustees' Motion to Dismiss on this basis is hence denied.

### *8. Slander of Title*

Defendants' Slander of Title (Count IV) claim is brought solely by Defendants Morress, LLC; RDM I, LLC; RDM II, LLC; RDM III, LLC; RDM IV, LLC; RDM V, LLC; and RDM VI, LLC, alleging pecuniary loss sustained as a result of the filing of this lawsuit. Relevant statements made in a judicial proceeding are, however, protected by absolute immunity. *Trotter v. Ind. Waste Sys., Inc.*, 632 N.E.2d 1159, 1162 (Ind. Ct. App. 1994) (citing *Stahl v. Kincade*, 135 Ind. App. 699, 707 (1963)). Defendants do not provide any reason why this rule does not apply here or why the statements are not relevant to this proceeding. Accordingly, the Trustees are immune from suit on this point, and the Court grants the Trustees' Motion to Dismiss the Slander of Title claim (Count IV).

### *9. Conclusion*

Thus, the Trustees' Motion to Dismiss is granted as to Defendants' Counterclaims of Breach

of Contract (Count I), Slander of Title (Count IV), and Fraud (Count V) and denied as to the remaining counts.

### III. Motion to Strike

The Trustees filed their Motion to Strike contemporaneously with their Motion to Dismiss, and it is joined to the Motion to Dismiss under Federal Rule of Civil Procedure 12(g)(1).

### A. Standard of Review

Federal Rule of Civil Procedure 12(f) provides that courts "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f); *see also Delta Consulting Grp., Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009) (citing Rule 12(f) and affirming the striking of portions of a Counterclaim). The Seventh Circuit Court of Appeals has held that motions to strike are generally disfavored—nevertheless, a motion to strike may "serve to expedite, not delay," when it seeks to strike portions of a pleading to "remove unnecessary clutter from the case." *Heller Fin. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989). Affirmative defenses are stricken "only when they are insufficient on the face of the pleadings." *Williams v. Jader Fuel Co., Inc.*, 944 F.2d 1388, 1400 (7th Cir. 1991) (citing *Heller*, 883 F.2d at 1294) ("Ordinarily, defenses will not be struck if they are sufficient as a matter of law or if they present questions of law or fact.").

"Affirmative defenses are pleadings and, therefore, are subject to all pleading requirements of the Federal Rules of Civil Procedure" and "must set forth a 'short and plain statement' of the defense." *Heller*, 883 F.2d at 1294 (quoting Fed. R. Civ. P. 8(a)). In *Heller*, the court found several defenses meritless because they were "nothing but bare bones conclusory allegations," noting that the defendant "omitted any short and plain statement of facts and failed totally to allege the

13

necessary elements of the alleged claims." *Id.* at 1295.

## B. Analysis

The Trustees ask that the Court strike each of the affirmative defenses corresponding to the dismissed Counterclaims. The Court dismissed Defendants' Counterclaims for Fraud, Breach of Contract, and Slander of Title. The Court hence considers only those affirmative defenses that rely on, or relate to, those bases.

### *1. Breach of Contract*

Paragraph sixty-three of the Amended Answer alleges that Cathie's Cartage entered into an agreement with the Trustees under duress since it could not have worked without entering into a bargaining agreement. Paragraph sixty-four likewise asserts that there has been a lack of consideration in the execution of the bargaining agreement. Paragraph sixty-seven alleges breach of contract as the basis for an Affirmative Defense of Unclean Hands. Paragraph seventy-two claims that the Trustees' breach of contract excuses Defendants from all duties and obligations under that contract. As discussed above, Defendants have failed to plead anything that could lead the Court to conclude that there exists any contract (express or implied) between the Trustees and Defendants. The Court thus grants the Trustees' Motion to Strike the Affirmative Defenses set forth in paragraphs sixty-three, sixty-four, sixty-seven, and seventy-two of the Amended Answer.

Though it deals with a contract, the Affirmative Defense at paragraph seventy-one does not refer to an alleged contract between the Trustees and Defendants. Accordingly the Motion to Strike the Affirmative Defense at paragraph seventy-one is denied.

### *2. Fraud*

In paragraph sixty-nine, which claims equitable estoppel, Defendants allege that the Trustees

14

are barred from pursuing this cause of action "by reason of acts, omissions, representations[,] and courses of conduct by Plaintiffs by which Defendants were led to rely to their detriment . . . ." (Defs. Am. Ans. 20).

This Affirmative Defense is a bare-bones conclusory allegation, devoid of any specific factual claims. It does not give any indication as to what "acts, omissions, representations" etc. are involved. The Motion to Strike is granted on this point.

### *3. Remaining Affirmative Defenses*

The Court finds that none of the other Affirmative Defenses relate to the Counterclaims of Breach of Contract, Slander of Title, or Fraud and accordingly denies the Motion to Strike as to the remaining Affirmative Defenses.

### III. Conclusion

For the reasons explained above, the Court hereby **STRIKES** all answers, affirmative defenses, and counterclaims brought by Cathie's Cartage, Inc. in the Amended Answer [DE 74] and **REMINDS** the parties that the stay as to Cathie's Cartage, Inc. remains in place. The Court **DIRECTS** the Clerk of Court to remove Cathie's Cartage, Inc. from the caption as a Counterplaintiff. (Cathie's Cartage, Inc. remains on the caption as a defendant, albeit a stayed defendant.)

The Court **GRANTS in part** and **DENIES in part** both the Motion to Dismiss Defendants'/Counterplaintiffs' Counterclaims Pursuant to Rule 12(B)(6) [DE 77] and the Plaintiffs'/Counterdefendants' Motion to Strike Affirmative Defenses [DE 79]. The Court **GRANTS** the Motion to Dismiss insofar as it seeks to dismiss Defendants' Counterclaims of Breach of

Contract (Count I), Slander of Title (Count IV), and Fraud (Count V); it is **DENIED** as to the remaining Counterclaims. The Court **GRANTS** the Motion to Strike insofar as it seeks to strike the Affirmative Defenses found in paragraphs 63, 64, 67, 69, and 72 of the Amended Answer; it is **DENIED** as to the remaining Affirmative Defenses.

SO ORDERED this 20th day of March, 2014.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc: All counsel of record